IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAMES BOSWORTH | ) | C/A No.: 2:24-cv-02584-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | |
| KIPLING VENTURES HOLDING CO., LLC., KIPLING RESERVE, LLC, SIMEON RAMSDEN, individually, RESERVE OWNERSHIP GROUP, LLC, KEOWEE RIVER CLUB, LLC and RESERVE VENTURES, LLC | ) ) ) ) ) ) ) ) | **Jury Trial** |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff James Bosworth, complaining of the above-named defendants and who alleges unto this Honorable Court as follows:

**PARTIES AND JURISDICTION**

1. The Plaintiff is a resident of Berkeley County, South Carolina.

2. Upon information and belief, the defendant Kipling Ventures Holding Co., LLC ("KV Holdings") is organized and exiting under the laws of the State of Delaware, and upon further information and belief has conducted business in the South Carolina, including but not limited to entering into contracts and agreements as explained herein.

3. Upon information and belief, the defendant Kipling Reserve, LLC ("Kipling Reserve") is organized and exiting under the laws of the State of Delaware, and upon further information and belief has conducted business in the South Carolina, including but not limited to entering into contracts and agreements as explained herein.

4.     Upon information and belief, the defendant Simeon Ramsden ("Ramsden") is either a citizen of the United Kingdom, the United State of America, or both. But in either event is a resident of the state of Florida, and upon further information and belief has conducted business in South Carolina as explained herein.

5.     Upon information and belief Keowee River Club, LLC ("KRC") is organized and exiting under the laws of the state of South Carolina, and in addition to owning property in South Carolina owns and operates a private golf and country club known commonly as the Reserve at Lake Keowee located in Pickens County, South Carolina.

6.     Upon information and belief Reserve Ownership Group, LLC ("ROG") is organized and exiting under the laws of the state of Delaware and conducts business in South Carolina under a Certificate of Authority issued by the South Carolina Secretary of State and which maintains a registered agent in Charleston County, South Carolina.

7.     Upon information and belief ROG is (or the times relevant to this action was) the owner of all the membership interests in and/or assets of KRC, and KRC was/is the record owner of certain real property in a private golf and country club development known commonly as the Reserve at Lake Keowee located in Pickens County, South Carolina.

8.     Reserve Ventures, LLC, is organized and existing under the laws of the State of Georgia, which upon information and belief, either before, during, or after the actions alleged herein, acquired all membership interest in and/or assets of ROG and by extension KRC.

9.     Upon information and belief, Reserve Ventures, LLC acquired ROG from KV Holdings and/or Kipling Reserve, and Reserve Ventures, LLC is now the *de facto* owner and operator of KRC.

10. Reserve Ventures, LLC is named herein as the owner, either directly or indirectly, of ROG and/or KRC.

11. This action stems from the promissory note executed by KV Holdings, on or about April 29, 2022, by which KV Holdings was obligated to make payment to Hall.

12. KV Holdings has defaulted on the note.

13. Ramsden is (or at the relevant times hereto was) the manager and member of KV Holdings, Kipling Reserve, and/or ROG, and engaged in the conduct alleged herein on behalf of himself as well as KV Holdings, Kipling Reserve, and/or ROG and such conduct occurred, at least in part in the state of South Carolina.

14. This Court has subject matter jurisdiction over this action.

15. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332 and the amount in controversy exceeds $75,000.00.

## FACTUAL ALLEGATIONS

16. Upon information and belief, KV Holdings is a real-estate development company and in the business of purchasing, developing and/or managing residential communities either itself or through subsidiary entities.

17. Upon information and belief KV Holdings is managed and controlled by Ramsden.

18. In 2022, Ramsden and/or KV Holding identified a potential investment opportunity to acquire the undeveloped real estate, existing golf club, and association management of a private golf and lakefront Community in Pickens County, South Carolina commonly known as the Reserve at Lake Keowee, (the "Reserve").

19. At the time, the undeveloped real estate, golf club, and association management of the reserved was owned/operated by (at least) three different South Carolina entities: (i) KRC (a

South Carolina limited liability company); (ii) KRC Golf Group, LLC (a South Carolina limited liability company); and (iii) The Reserve at Lake Keowee Community Association, Inc. (a South Carolina non-profit entity). Collectively all these entities are referred to herein as the "Reserve Companies."

20. Upon information and belief, in order to facilitate this transaction KV Holdings and/or Ramsden created or caused to be created: (i) Kipling Reserve—a Delaware entity—on February 22, 2022, and (ii) ROG—a South Carolina entity—on March 2, 2022.

21. Upon information and belief, at the times alleged herein, KV Holdings owned a controlling interest in Kipling Reserve, and Kipling Reserve in turn owned the controlling interest in ROG.

22. ROG (as a subsidiary to KV Holdings) was created as a single purpose entity to purchase the various Reserve Companies.

23. Bosworth facilitated an introduction between Simeon, Kipling Reserve, ROG (on the one hand) with Bay Point Advisors LLC ("Bay Point") which could serve as an independent source of funding for the acquisition of the Reserve Companies.

24. On April 22, 2022, ROG executed a promissory note with Bay Point, through which Bay Point provided a short-term loan to ROG, in order to fund ROG's acquisition of the Reserve.

25. In exchange for Bosworth brokering the deal between ROG and Bay Point, Bosworth and Kipling Reserve entered a written contract entitled Class C Investment Memorandum of Understanding (herein the "Contract" and attached as **Exhibit A**).

26. Pursuant to the Contract, Bosworth was to receive the following:

    a.    Payment of $240,000.00 payable in monthly installments with the total to be paid within one year of the ROG's acquisition of the Reserve; plus

4

    b. A developable lot in the Reserve with a value equal to $675,000.00; plus

    c. A Distributional Interest of 1% of the net profits of Kipling Reserve.

27. The purchase of the Reserve Companies closed on or about June 15, 2022.

28. At the time of the closing, and/or at all time relevant hereto, the undeveloped real property at the Reserve was owned by KRC. Therefore, upon information and belief, the lot contemplated by the Contract (as described at Paragraph 26 (b) above) was at all relevant times, owned by KRC.

29. ROG, as owner/sole member of KRC, was authorized to bind KRC to the obligations regarding the lot owed to Bosworth under the Contract.

30. Bosworth received one $20,000.00 installment payment toward the $240,000.00 owed to him. To date the balance of $220,000.00 (not inclusive of interest) remains unpaid.

31. When Bosworth inquired about the payments he was advised that such payments would be forthcoming.

32. In exchange for the delay in payments Ramsden, as manager of the Reserve at Lake Keowee Club offered Bosworth a Premier Invitational Membership at the Reserve Club at no cost to Bosworth.

33. The Reserve at Lake Keowee Club was owned and operated by KRC (one of the Reserve Entities) and on December 7, 2022, Plaintiff and KRC executed a membership agreement for a free and transferable premier membership.

34. In the later months of 2022, Bosworth learned that Ramsden, on behalf KV Holdings and/or Kipling Reserve (as the parent company of ROG) had negotiated a proposed transaction through which the outstanding equity/stock in ROG would be sold to James Whitley, and/or a company owned or controlled by Mr. Whitley.

5

35. Reserve Ventures, was formed under the laws of Georgia when the same filed its certificate of organization on December 7, 2022, which identifies Mr. Whitley as its registered agent.

36. On December 30, 2022, Bosworth, through counsel, sent notice requesting that its interest be paid prior to the sale to Mr. Whitley.

37. Upon information and belief, the sale of ROG to Reserve Ventures closed on or around January 15, 2023.

38. Upon information and belief the proceeds from this sale were used for the benefit of Ramsden personally, rather than to pay the creditors of KV Holdings, Kipling Reserve, or ROG.

39. After purchasing ROG, Reserve Ventures, LLC, became the *de facto* owner of the Reserve Entities (which are owned by ROG) including the KRC, which had previously executed a membership agreement with Plaintiff.

40. As a result of the aforementioned acquisition an agency relationship existed between ROG and Reserve Ventures, LLC such that the former was the agent of the latter.

41. Upon information and belief, at the time Reserve Ventures, LLC purchased ROG, it was aware of the obligations owed to Bosworth and others.

42. On or about January 18, 2023, Maria Stewart sent notice to Plaintiff recalling/cancelling Plaintiff's Premier Membership on behalf of Reserve Ventures, LLC as the "new owners" of KRC.

43. Except a single installment payment of $20,000.00, to date Bosworth has been paid no portion of the amounts due to him, nor has he received the parcel of land (or $675,000 value thereof), nor has he received any distribution, nor has he received the benefit of his Premier Membership in the club.

44. Upon information and belief, the complicated and confusing series of companies and parents/subsidiaries was part of an intentional effort to mask, disguise, or otherwise make it difficult for those involved in the Reserve transaction to know who they were dealing with.

45. Upon information and belief, KV Holdings, Kipling Reserve and/or ROG were merely shells for Ramsden.

46. Because the operations of KV Holdings, Kipling Reserve, and ROG are intertwined, and because Ramsden, acting on behalf of KV Holdings, Kipling Reserve, and ROG acted with bad faith, as more fully set forth herein, KV Holdings, Kipling Reserve, and ROG should be amalgamated (where applicable) under the single-business enterprise theory.

47. Reserve Ventures, LLC as the principal of ROG is responsible for the actions and liability of ROG to the extent it adopted those actions of ROG that were taken prior to its acquisition of ROG, and Reserve Ventures, LLC is responsible for the actions of ROG taken after its acquisition.

### AS A CAUSE OF ACTION AGAINST KIPLING RESERVE, RAMSDEN, KIPLING VENTURES, ROG and KRC
### (Breach of Contract)

48. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

49. There existed a valid and enforceable contract between Plaintiff and Kipling Reserve *to wit* the Contract (**Exhibit A**).

50. Plaintiff did not breach the contract and satisfied all conditions precedent, if any, required of him.

51. In failing to make payment to Plaintiff as required by the Contract, Kipling Reserve has breached the Contract.

52. In failing to provide the lot contemplated by the Contract, Kipling Reserve, and/or ROG, and/or KRC breached its obligations under the Contract.

53. In exchange for the delayed performance by Kipling Ventures, and/or ROG, and/or KRC, KRC offered additional compensation to Plaintiff in the way of a Premier Membership, such obligation constituting a valid and binding contract.

54. In recalling this Premier Membership, KRC breached this contract.

55. As the direct and proximate result of this breach, Plaintiff has suffered damages consisting of the amount due under the Contract, plus the value of a lot of not less than $675,000.00, plus the value of 1% distributional interest in Kipling Reserve, plus the value of the Premier Membership promised, then revoked, plus the additional consideration for the extension(s), together with interest, costs, attorney fees, and prejudgment interest, as due and collectable thereunder in an amount to be determined at trial.

## AS A CAUSE OF ACTION AGAINST KV HOLDINGS, KIPLING RESERVE, ROG, KRC, AND RAMSDEN
### (Breach of Contract Accompanied by Fraudulent Act)

56. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

57. There was a valid contract between Plaintiff and Kipling Reserve.

58. At all relevant times hereto, Ramsden was an officer, manager, and/or member of KV Holdings, Kipling Reserve, and ROG.

59. In this capacity, Ramsden engaged in conduct of dishonesty in fact, unfair dealings, and/or acted with a design to appropriate Plaintiff's money and avoid repayment of the obligation owed to Plaintiff by making false and misleading promises and representations.

60. Ramsden knew or should have known his promises and representations were untrue and misleading.

61. Ramsden's conduct related to the breach of the aforementioned Contract and was undertaken with fraudulent intent.

62. As a direct and proximate result of this fraudulent conduct Plaintiff has suffered damages, which he is entitled to recover, together with punitive damages, both in an amount to be determined at trial.

## AS A CAUSE OF ACTION AGAINST KV HOLDINGS, KIPLING RESERVE, ROG, AND KRC
### (Promissory Estoppel)

63. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

64. Ramsden on behalf of himself and/or ROG and/or KV Holdings and/or Kipling Reserve, and/or KRC assumed and promised to make payment of the amounts owed to Bosworth.

65. Ramsden on behalf of himself and/or ROG and/or KV Holdings and/or Kipling Reserve, and/or KRC promised to pay the obligations under the Contract.

66. Plaintiff reasonably and foreseeably relied on this promise, and as a direct and proximate result has suffered damages in the loss of the amount due under the note, together with the additional consideration promised, together with interest, costs, and attorney fees in an amount to be determined at trial.

## AS A CAUSE OF ACTION AGAINST KV HOLDINGS, KIPLING RESERVE, AND RAMSDEN
### (Accounting)

67. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

68. Plaintiff has a distributional interest in Kipling Reserve.

69. Upon information and belief, at all times relevant hereto, Kipling Reserve was a subsidiary of KV Holdings.

70. And at all times relevant hereto, KV Holding, Kipling Reserve and ROG were controlled and managed by Ramsden.

71. Plaintiff is entitled to an accounting for all transactions and activities related to the purchase, ownership, and/or sale of any interests related to the Reserve.

### AS A CAUSE OF ACTION AGAINST RAMSDEN, KIPLING RESERVE, AND KV HOLDINGS
(Constructive Trust)

72. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

73. In or around the summer of 2022 Kipling Reserve, owned a valuable asset: *to wit* ROG (which in turn owned the Reserve Entities, including the land-owning KRC).

74. In or around January of 2023, Ramsden, on behalf of himself and/or KV Holdings, and/or Kipling Reserve and/or ROG negotiated the sale of ROG to Reserve Ventures, LLC.

75. Through this sale, Reserve Ventures, LLC became the owner and operator of the Reserve Companies.

76. Through this sale Kipling Reserve, and/or KV Holdings, and/or Ramsden received proceeds from Reserve Ventures, LLC.

77. As further described herein, at the time these proceeds were received, Plaintiff was owed certain sums under the Contract and held a distributional interest in the same.

78. In equity and good conscious, the funds derived from the sale of ROG to Reserve Ventures, LLC, are and should be held in trust for the benefit of/repayment of Plaintiff.

## AS A CAUSE OF ACTION AGAINST KRC AND RESERVE VENTURES
### (Statute of Elizabeth)

79. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

80. At all times relevant hereto, KRC owned certain real property at the Reserve.

81. At the time Kipling Reserve contracted with Plaintiff, Kipling Reserve was the sole member/owner of ROG; and ROG in-turn held a contingent interest in the real property owned by KRC.

82. When ROG purchased KRC in June of 2022, ROG and its parent entity Kipling Reserve obtained and realized that interest in the real property owned by KRC.

83. When Kipling Reserve sold ROG to Reserve Ventures, LLC, in January 2023, the latter became the owner of KRC and real property KRC owned.

84. At the time Kipling Reserve sold ROG (and its subsidiary KRC) to Reserve Ventures, LLC in January 2023, Ramsden, Kipling Reserve and ROG were all aware that the Kipling Reserve had pledged lot to Plaintiff as part of the consideration promised under the Contract.

85. Ramsden, acting on behalf of himself, as well as Kipling Reserve and ROG ignored requests from Plaintiff requesting information and documentation necessary to preserve Plaintiff's interest in the real property owned by KRC.

86. Upon information and belief, Kipling Reserve's action of selling/transferring ROG (and its subsidiary KRC) to Reserve Ventures, LLC, Kipling Reserve effectively divested itself of the interest in real property held by KRC.

87. Upon information and belief, in making this conveyance Kipling Reserve acted with the intent to defraud or otherwise delay, hinder or impede Plaintiff's right to collect and receive the payment and compensation that is rightfully owed to him under the Contract.

88. The conveyance of ROG (and its land-owning subsidiary KRC) to Reserve Ventures was made in violation of S.C. Code Ann.§ 27-23-10.

89. Therefore, and pursuant to S.C. Code Ann.§ 27-23-10 the sale of ROG to Reserve Ventures was/is void, and Plaintiff is entitled to an Order declaring the same.

### AS A CAUSE OF ACTION AGAINST ALL DEFENDANTS
(Violation of the S.C. Unfair Trade Practices Act – S.C. Code Ann. §39-5-10 *et seq.*)

90. Plaintiff incorporates the foregoing paragraphs as if restated verbatim, except where inconsistent.

91. Plaintiff suffered an ascertainable loss of money as a result of the conduct alleged herein on the part of Defendants.

92. KV Holdings, Kipling Reserve, ROG, KRC, and/or Ramsden personally used artifice, deceit and misrepresentations in an effort to avoid or postpone its payment obligation to Plaintiff, in order to arrange for the sale of ROG.

93. The convoluted and complicated maze of corporate entities involved in this process was part of the scheme.

94. Through the use of this scheme KV Holdings, Kipling Reserve, ROG, KRC, and/or Ramsden personally received financial benefit at the expense of Plaintiff.

95. Upon information and belief, Plaintiff is not the only victim of this scheme, and KV Holdings, Kipling Reserve, ROG, KRC, and/or Ramsden personally have employed similar schemes to avoid financial obligations owed to other related to the Reserve.

96. KRC provided additional compensation to Plaintiff *to wit* a Premier Membership, in exchange for Plaintiff not receiving timely payment under the Contract.

97. This additional consideration was used as a ruse to delay performance under the Contract until Reserve Ventures, LLC could complete its acquisition of ROG and the Reserve Entities, and once Reserve Ventures, LLC completed its acquisition, this additional consideration was taken back.

98. Before Reserve Ventures, LLC, acquired ROG and the Reserve Entities, Reserve Ventures knew of the obligations owed to Plaintiff and others, and knew of, or should have known of, the actions taken by ROG, and its subsidiary KRC, regarding the obligations owed to Plaintiff.

99. Upon information and belief, Plaintiff is not the only victim of this scheme, and KRC and/or Reserve Ventures, LLC have employed similar schemes to avoid financial obligations owed to others related to the Reserve.

100. As a direct and proximate result of these actions Plaintiff suffered damage in an amount to be determined at trial.

101. Upon information and belief, Plaintiff was not the only victim of the scheme(s) described above, which has been employed against others related to the Reserve.

102. This scheme and conduct had an adverse effect on the public interest in South Carolina because it has been repeated and is capable of being repeated.

103. It was foreseeable that this scheme and conduct would have an adverse impact on the public interest in South Carolina, and such impact on the public has occurred inasmuch as Defendants, upon information and belief, are currently facing other complaints brought by other victims in relation to the same or substantially similar grounds as alleged herein. These other

incidents reveal a pattern of conduct that is and was capable of repetition, and in fact was repeated by Defendants.

104. These other incidents demonstrate that Defendants' conduct is and was capable of repetition and amounts to conduct which is a violation of those actions prohibited by the Act.

105. Defendants knew or should have known their conduct was in violation of the Act, and therefore a willful violation of the Act occurred.

106. Therefore, Plaintiff is entitled to a judgment against Defendants for all resulting, actual, consequential, and special damages, along with treble damages and reasonable attorney's fees and costs, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a) That judgment be entered in favor of Plaintiff and against the Defendants;

b) That Plaintiff be awarded all actual, consequential, special, and treble damages in an amount to be determined at trial;

c) That Plaintiff be awarded punitive damages in an amount to be determined at trial;

d) That this Court Order that all money received by KV Holdings, Kipling Reserve, ROG and/or Ramsden from the sale of the Reserve Companies is held in trust for the benefit of Plaintiff;

e) That Plaintiff be awarded prejudgment interest together with attorney fees and costs; and

f) That Plaintiff be granted other and further relief as this Court may deem proper.

[Signature block to follow]

Respectfully submitted,

>THURMOND KIRCHNER & TIMBES, P.A.
>
>*[signature]*
>
>Thomas J. Rode (Fed. Bar #11139)
>Sarah D. Baum (Fed. Bar#13421)
>15 Middle Atlantic Wharf Charleston, SC 29401
>(843) 937-8000
>sarah@tktlawyers.com
>thomas@tktlawyers.com
>*Attorney for Plaintiff*
>
>RIESEN DURANT, LLC
>
>*[signature]*
>
>G. Rutledge DuRant (Fed. Bar #9792)
>613 Long Point Road, Suite 100
>Mount Pleasant, SC 29464
>(843) 800-0809
>rutledge@riesendurant.com
>*Attorney for Plaintiff*

April 23, 2024
Charleston, South Carolina

## **VERIFICATION**

I, <u>James Bosworth</u>, first being duly sworn in accordance with law, and with personal knowledge of the facts and subject matter stated and alleged therein, do hereby depose and state that I have fully read the foregoing Verified Complaint made against the above captioned defendants, and that the facts stated and alleged therein are true to the best of my knowledge, except where stated to be based upon information and belief, in which case I believe such facts to be true.

*[signature]*

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

This instrument was sworn to and executed before me this __23__ day of __April__, 2024 by <u>James Bosworth</u>, who is personally known to me or who has produced adequate proof of his identification and who did take an oath.

__*[signature]*__
Notary Public for the State of South Carolina

My Commission Expires: __1/4/2032__

*[Notary seal: CHRISTINA SOJOURNER, NOTARY PUBLIC, STATE OF SOUTH CAROLINA, My Commission Expires January 4, 2032]*

16